ANDREW D. COOK

v.

GEORGE M. CHAPMAN.

1. Under an injunction bond, with condition that the complainant shall pay such damages as the defendant shall sustain by reason of the injunction, in case it is finally decided that the complainant was not equitably entitled to the injunction, a defendant is entitled to recover a reasonable amount of counsel fees necessarily expended in getting rid of the injunction.

2. But under such a bond a defendant is not entitled to recover compensation for the time and service he may have devoted to the case, nor to compensation for the mental strain and anxiety he may have suffered in consequence of the injunction.

On exceptions to master's report.

*Mr. J. Henry Stone*, for complainant.

*Mr. William S. Gummere* and *Mr. Oscar Keen*, for defendant.

VAN FLEET, V. C.

The questions now before the court for decision arise on exceptions to a master's report. When the bill in this case was filed, the complainant obtained an order requiring the defendant to show cause why an injunction should not issue against him. Subsequently, an injunction was granted conditionally, the condition being that the complainant should execute a bond, with sureties, to the defendant, conditioned to pay him such damages as he should sustain by reason of the injunction, in case it should finally be decided that he was not equitably entitled to the in-

Cook v. Chapman.

junction. The bond was executed, and subsequently and after the dissolution of the injunction, was declared by the court to be forfeited, and a reference ordered to a master to ascertain and report the damages the defendant had sustained. The questions now before the court arise on the master's report made under this order.

The exceptions taken to the report are so comprehensive as to render a reconsideration of the case, in all its branches, necessary. While the exceptions on the part of the complainant challenge each allowance made to the defendant, the argument of his counsel, on the hearing, was mainly directed against two items: first, the allowance made to the defendant for his time and services in procuring a dissolution of the injunction, and for the mental strain and anxiety he suffered in consequence of the injunction. The master has allowed for counsel fees a little over $4,300. The complainant denies the right of the defendant to recover counsel fees at all, but says that if they are recoverable in cases of this kind the amount allowed to the defendant is unreasonable and excessive.

Judicial opinion on the question whether or not counsel fees should be allowed as damages in such cases, is not uniform in this country. The supreme court of the United States holds

Note.—Some recent cases are appended on the point that counsel fees incurred in resisting or removing an injunction are recoverable as damages in an action on the injunction bond, *Bolling* v. *Tate, 65 Ala. 417; Bustamente* v. *Stewart, 55 Cal. 115; Porter* v. *Hopkins, 63 Cal. 53; Swan* v. *Timmons, 81 Ind. 243; Carroll Co.* v. *Iowa R. R. Land Co., 53 Iowa 685; Ford* v. *Loomis, 62 Iowa 586; Underhill* v. *Spencer, 25 Kan. 71; Meaux* v. *Pittman, 35 La. Ann. 360; Valentine* v. *McGrath, 52 Miss. 112; Strong* v. *Harrison, 62 Miss. 61; Miles* v. *Edwards (Mont.) 9 West Coast Rep. 648; Solomon* v. *Chesley, 59 N. H. 24; Lyon* v. *Hersey, 32 Hun 253; Cromse* v. *Syracuse &c. R. R. Co, Id. 497; Newton* v. *Russell, 87 N. Y. 527; Randall* v. *Carpenter, 88 N. Y. 293; Livingston* v. *Exum, 19 S. C. 223.*

The case of *Oelrichs* v. *Spain, 15 Wall. 230,* was followed in *Browning* v. *Porter, 2 McCrary 581; Oliphant* v. *Mansfield, 36 Ark. 191;* and see *Littleton* v. *Frank, 2 Lea 300.*

Attorneys' fees were held recoverable in an action in a state court on an injunction bond given in a federal court, *Wash* v. *Lackland, 8 Mo. App. 122.*—Rep.

that they should not be allowed. The reason assigned for this view is that their allowance is forbidden by the analogies of the law, and by sound public policy. It is said that they are allowable in no other case in equity ; that all that a successful complainant in any other equity case can recover are his taxable costs, and that a successful defendant's right to be re-imbursed for the expenses of litigation is subject to the same limitation, no matter how groundless and unjust the suit against him may have been, nor how much he may have been compelled to spend in resisting it. And it is likewise said that, were it once known that one party might be obliged to pay the counsel fees of the other, there would be great danger of abuse ; more counsel would be employed than were necessary ; the difficulties of the case would, in many instances, be magnified, and a great deal of unnecessary work done ; suitors would pay much more liberally out of the pockets of their adversaries than they would out of their own, and thus, in a matter entirely outside of the issues presented by the pleadings, a litigation might arise which would impose upon the court a task of greater difficulty and delicacy than that which the decision of the main case imposed, and this incidental or engrafted litigation would, in many cases, be more protracted and expensive than that in the original case. *Oelrichs* v. *Spain, 15 Wall. 211.*

The course of decision, however, in many of the states is the other way. It is there held that a reasonable amount of counsel fees, necessarily expended in getting rid of an injunction unfairly obtained, may be recovered under a bond or undertaking similar in its provisions to the terms of the bond on which this proceeding is founded. Such, it is said, is the course of decision in New Hampshire, New York, Ohio, Illinois, Indiana, Iowa, Alabama and California. *2 High on Injunc. § 1685 et seq.; 2 Suth. on Dam. 64 et seq.* I have not examined any of the cases except those decided by the courts of New York and Ohio. In both those states the rule as above stated is firmly established. *Edwards* v. *Bodine, 4 Edw. Ch. 292 ; S. C. on appeal, 11 Paige 223 ; Aldrich* v. *Reynolds, 1 Barb. Ch. 613 ; Corcoran* v. *Judson, 24 N. Y. 106 ; Rose* v. *Post, 56 N. Y. 603.*

Cook v. Chapman.

It has also been held in New York that even where an unsuccessful motion to dissolve has been made—the court refusing to dissolve because it deems it more advisable to defer inquiry into the merits until the final hearing—that if, on final hearing, it appears the complainant obtained the injunction unfairly, the counsel fees on final hearing, as well as those incurred in making the unsuccessful motion, are recoverable as a part of the damages which the defendant has sustained by reason of the injunction. The counsel fees on the final hearing are allowed in such cases on the ground that the complainant, by resisting the defendant's motion and inducing the court to deny it, has compelled the defendant to incur the expense of trying the case on its merits in order to get rid of the injunction. *Andrews* v. *Glenville Woolen Co., 50 N. Y. 282; Hovey* v. *Rubber Tip Pencil Co., Ib. 335.* But a later case seems to hold that the counsel fees of the final hearing are not recoverable in such cases, unless the sole or main question to be determined on the final hearing is whether or not the injunction shall be continued. *Disbrow* v. *Garcia, 52 N. Y. 654.* This rule expresses, in substance, the Ohio doctrine. It is there held that a reasonable amount of counsel fees, necessarily incurred in procuring the dissolution of an injunction unfairly obtained, may be recovered under a contract of indemnity similar in its terms to the bond given in this case, but the rule is subject to this limitation : where the injunction is merely auxiliary to the main object sought to be attained by the action, and no effort is made to get rid of the injunction before final hearing, and the injunction is dissolved on final hearing because the complainant fails in his action, no counsel fees whatever are recoverable. The limitation rests upon this reasoning : it is said that if no injunction had been granted, the defendant, in resisting the action, would have been compelled to make precisely the same expenditure that he has in resisting the action with an injunction, and therefore it cannot be said that such expenditure was caused by the injunction. *Noble* v. *Arnold, 23 Ohio St. 264; Riddle* v. *Cheadle, 25 Ohio St. 278.*

The courts of this state are, so far as I am aware, entirely uncommitted on this question, and they are therefore at liberty to

Cook *v.* Chapman.

adopt any rule which may seem to them best calculated to prevent wrong and to promote justice. It is a cardinal rule of the law of damages that whenever loss results to one person naturally and directly from the illegal act of another, such loss is the proper subject of judicial relief by compensation in damages. Now, whenever an injunction is unfairly obtained, the defendant is put under a restraint which he ought not, in justice, to have been required to bear; in other words, the complainant procures the court to restrain him from doing something, which the complainant has no right, according to the truth and right of the case, to have him restrained from doing. In this condition of affairs, the defendant must submit to a deprivation of his rights, or take the necessary steps to have himself relieved from the restraint. To get rid of the injunction, he must have the aid of counsel. Such are the means usually, if not universally, resorted to to obtain relief in such cases, and no prudent suitor would think of having recourse to any other. The defendant's outlay, then, for counsel fees is the direct consequence of the complainant's act—the immediate effect of a cause created by the complainant. The outlay is one which the complainant knows, when he gives his bond, that the defendant must make or suffer himself to be deprived of his rights. The complainant's obligation is to pay the defendant any damages which he may sustain by reason of the injunction. Now, if the complainant, when he obtains an injunction, has no right to it, and that fact cannot be demonstrated to the agency having power to continue or dissolve the injunction without an expenditure of money by the defendant, it would seem to be tolerably clear, as a matter of logic, that the moneys expended by the defendant for that purpose would constitute a part of the loss he would sustain by reason of the injunction. Indeed, that part of his loss could, in most instances, be traced to the injunction with more absolute certainty than any other.

Where the act of a complainant makes it necessary for a defendant to expend his money to rid himself of an illegal or unjust restraint, the loss thus suffered is an actual damage which the defendant has sustained by reason of the restraint. There is

Cook v. Chapman.

a wide distinction between the rights of a defendant under a contract of this kind and those of a successful defendant without such contract. The latter, as a general rule, is not entitled to recover counsel fees. The law gives him no such right. But here the rights of the parties are regulated by contract. The contract is free from the least obscurity and its meaning perfectly plain. Read according to the plain sense of its language, it is manifest that it was intended to embrace any outlay which the defendant should be compelled to make to get rid of a restraint which the court refused to lay upon the defendant except upon condition that the complainant should agree to make good to him any damages he should sustain in consequence of the restraint, if it should ultimately turn out that the complainant was not entitled to have him restrained. Under such circumstances the court cannot allow itself to be controlled by legal analogies, but is bound to enforce the contract according to its terms, regardless of the difficulties which may attend the discharge of that duty. It is obvious that the court does not require that a bond shall be given in such cases merely to secure the payment of taxed costs. They are always under the control of the court, and the court has ample power to enforce any order it may deem proper to make in respect to them. My conclusion is that the defendant is entitled to recover such sum as he was necessarily obliged to pay for counsel fees in procuring a dissolution of the injunction.

The master has allowed the defendant a little over $4,300 for counsel fees. This allowance is said to be unreasonable and excessive. The injunction was granted July 5th, 1877, the defendant filed his answer on the 13th of October following, and the injunction was dissolved and the complainant's bill dismissed on the 20th of December following. The defendant was subject to the restraint of the injunction for a period of five and a half months. The injunction was not dissolved on motion, after argument, but by the consent of the complainant. So far as appears, no effort was ever made to get rid of the injunction, and no step ever taken looking in that direction except filing the answer. The case the defendant was required to answer was neither intricate nor difficult. The complainant, by his bill,

charged that he and his brother had, several years before, made an arrangement with the defendant by which the defendant undertook to enforce, by suit in the courts of West Virginia, at his own costs, certain claims which the complainant and his brother held against one or more railroad corporations. It was understood that, if the suits were successful and the moneys collected, the defendant should first re-imburse himself for his outlay and take out certain compensation, and then divide the balance equally between the complainant and his brother. The complainant alleged that after this arrangement had been made, the defendant and his brother entered into a conspiracy to cheat him, and in execution of that purpose his brother made an absolute assignment of the claims to the defendant, who subsequently brought suit thereon in his own name, representing himself to be the sole owner thereof, and had, since then, as such owner, recovered judgment thereon; the complainant also said that the defendant had never paid him a penny for his interest in the claims and now denied that he had any interest therein. The complainant claimed that inasmuch as the judgment, which had been recovered on the claims, stood in the defendant's name, and it was thus within his power at any time to satisfy it without payment, or to discharge it on such terms as he saw fit, his situation was one of such extreme peril as to entitle him to an injunction restraining the defendant from doing anything in relation to the judgment which would destroy or impair his rights. An injunction was asked as a mere auxiliary to the main relief, the principal relief sought being a decree that the defendant held the claims on which the judgment was founded as the trustee of the complainant and his brother.

The foregoing statement presents the substance of the complainant's case. It will be seen that the case the defendant was called upon to answer was a comparatively simple one. It involved nothing but his contract relations with the complainant. He must have known what these were the moment he received notice of the suit. The claims which were the subject of the contract were very large, the judgment recovered on them being nearly $300,000.

In affairs of such magnitude, men of ordinary prudence do not usually act either hastily or carelessly. They belong to the class of transactions of which written memorials are generally made, and if, in any instance, this precaution should be omitted, it is evident that the exceptional character of the affair, in point of importance, would be likely to fasten all its details so firmly upon the memory of the parties to it, that they would be able, with very slight effort, to recall them at a time when the more trifling and unimportant transactions of life, though of a much later date, would be entirely forgotten. The nature of the case shows that no very extended investigation by counsel was necessary to prepare the defence. The legal principles involved were settled and simple, and the facts on which the defence rested must have been well known to the defendant. He did not need the aid of counsel to discover them. He knew them all himself. It is true that there is no limit to the labor which a client may require of his counsel in a very simple case. He may require long and frequent consultations upon very trifling matters, and repeatedly ask direction and instruction in respect to matters upon which he has already been fully advised. The fears which ignorance frequently suggests, and the schemes which greed and fraud sometimes propose, give counsel, in some cases, I have no doubt, more labor and trouble than the real exigencies of the case require. For such services a suitor who has agreed to indemnify his adversary against damages is not bound to pay. They are not within the terms of his contract. He is only liable for a reasonable amount of counsel fees necessarily expended in getting rid of the injunction. That is the limit of his liability. The facility with which a defendant may abuse this right, and the ease with which the abuse may be concealed, render it the duty of the court to be always vigilant to see to it that the liability is kept within just and reasonable limits, and that in enforcing it, the court itself is not made the instrument of injustice and oppression.

The amount allowed by the master for counsel fees is, in my judgment, excessive. I regret to differ with him. His judgment, in consequence of his learning and large experience both

Cook *v.* Chapman.

as a practitioner and master, is entitled to very great respect and consideration. It may be that our difference is due to my want of appreciation of the difficulties of the defendant's case—he may have seen perplexities which I have not—but I have examined the case with the utmost care, I have endeavored to explore it thoroughly, and I am compelled to state, as the result of my examination, that I do not think that more than $1,000 could have been spent in counsel fees, for services that it was either necessary or useful to have done, in order to procure a dissolution of the injunction. That being my judgment, I am bound to declare it. Services rendered by counsel before the granting of the injunction, as well as those rendered in this proceeding to enforce the complainant's liability, are not allowable. They come within the general rule, and are not recoverable. The sum allowed for counsel fees should be reduced to $1,000. The defendant is entitled to interest on this sum from December 20th, 1877.

The master allowed the defendant $2,500 as compensation for his time and services in procuring the dissolution of the injunction, and for the mental strain and anxiety he suffered in consequence of the injunction. This allowance is contrary, I think, to both precedent and principle. An attempt was made, in *Edwards* v. *Bodine,* to induce the court to make a similar allowance. The claim made in that case was for compensation for time spent in going to counsel and consulting with him. Both the vice-chancellor and the chancellor rejected the claim, declaring that such loss was not a damage. *4 Edw. Ch. 292 ; 11 Paige 227.* There is such a thing known to the law as damage without injury, and this occurs where damage results from an act or omission which the law does not esteem an injury. Human tribunals administer justice imperfectly ; even when they do their best, the results obtained, as a general rule, are only approximations to perfect justice. There are wrongs and misfortunes, arising from casualties and the imperfections of human institutions, against which no human law can give protection. "The best cause," says the chancellor, in *New York and Long Branch R. R. Co.* v. *Dennis, 11 Vr. 340, 369,* " may be eventually lost by

the death or absence of one of the complainant's witnesses, or other like accident. Indeed, it may be lost by the death or even absence of the complainant himself or his agent. There are many casualties which may deprive a worthy complainant of relief in a most meritorious cause, and insure to a defendant a most unrighteous triumph. The uncertainty of the law is not confined to the results of the deliberations of petit juries, but it not unfrequently arises from radical differences of opinion and views between courts equally learned, wise, painstaking and conscientious, the final settlement of the question involved, one way or the other, depending in such cases merely on the order in which the different tribunals pass upon it." It is even possible for wrong to triumph over the right by perjury. When legal controversies arise, the courts, in order to ascertain the truth, must afford both parties a full and fair opportunity to show what the truth is. This is their right, and in no other way can the truth be discovered. It is a right manifestly indispensable to the effectual administration of justice, and yet there is no doubt that an unjust man may, in its exercise, make a protracted and bitter resistance to a perfectly honest claim ; he may give his adversary infinite trouble ; he may constrain him, by the desperate character of his resistance, to give much more time and attention to the litigation than it would otherwise require; indeed, it may be that he ought not, in conscience, to resist the suit at all; but what if he does; the law not only gives him the right to make defence, but allows him to exercise it in his own way. It is a right that the courts have no authority to abridge. It could not be abridged without seriously endangering the safe administration of justice. What is true of the right to make defence is equally so of the right to maintain a suit. They are both free and unrestricted. Every litigation requires more or less time and trouble. The law makes it the duty of litigants to be diligent and vigilant, but it has never been understood that a successful litigant was entitled, as against his adversary, to compensation for the time and attention which it was necessary for him to bestow upon the litigation. Time and attention thus bestowed the law has alway regarded as having been given by the litigant to his own busi-

ness, and that if he sustained loss in consequence thereof, it must be esteemed *damnum absque injuria.* (*a*)   The common law did not even allow a successful litigant to recover costs.   The word "damages" in this contract embraces nothing, in my judgment, but such injuries as, according to established principles, are the proper subjects of judicial redress by compensation in money. The defendant's claim is not recognized by the law of damages, and must be disallowed.

I shall not discuss the other exceptions.   All of them have been carefully considered, and such consideration has led me to the conclusion that none of them are well taken, and they must therefore be overruled.

