DIVISION 163, ET AL., OF THE AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA ET AL. *v.* THE CONNECTICUT COMPANY ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and RYAN, Js.

Argued May 4—decided July 18, 1961

*James O. Shea,* with whom was *John V. Cassidento,* for the appellants (plaintiffs).

*Thomas J. O'Sullivan,* for the appellee (named defendant).

MURPHY, J. The plaintiffs are seven local divisions of the union of the employees of the defendant The Connecticut Company, and ten of the officers and agents of the union. They sued The Connecticut Company, as principal, and the Lumbermens

Mutual Casualty Company, as surety, on a bond which was given to indemnify the plaintiffs upon the issuance of a temporary injunction in a labor dispute. The temporary injunction was dissolved upon the motion of the plaintiffs. One week later, the dispute was settled by negotiation between the parties and the Superior Court case which had been brought against the plaintiffs was withdrawn from court "without costs to either party or prejudice to the rights" of the plaintiffs. The trial court denied recovery on the bond and the plaintiffs have appealed.

Basically, the parties are in agreement on the facts. The divisions of the union are the recognized bargaining agents in labor relations between The Connecticut Company and its employees. Since 1950, the labor relations of the company and its employees have been governed by a collective bargaining agreement, to which a supplemental agreement, effective through September 30, 1958, was added in 1955. It modified the basic wage rate and included a cost-of-living adjustment clause. A dispute as to the interpretation of the cost-of-living clause arose in 1957, and the parties were unable to adjust the dispute under the grievance procedure of the contract. On October 11, 1957, the employees voted to strike ten days later. The company, on October 15, instituted an action returnable to the November term of the Superior Court. In that action the company sought a temporary and permanent injunction commanding the union and its agents to cancel the strike and asked for specific performance of the 1955 supplemental contract. On the same day, the company obtained from John Clark FitzGerald, as a judge of the Superior Court, a temporary injunction restraining the union and its agents from in-

ducing persons not to continue in their employment with the company and further ordering the union and its agents to cancel forthwith the strike call of October 11, 1957, and to take appropriate affirmative action to prevent the strike. The issuance of the temporary injunction was conditioned upon the company's giving a bond to the union divisions and agents, with surety satisfactory to Judge FitzGerald, in the sum of $20,000, "to answer all damages" in case the company should fail to prosecute its action to effect. See General Statutes § 31-115. Also on the same day, October 15, the company furnished the bond, approved by the judge; the defendant casualty company was surety on the bond. It recited that "the condition of this obligation is such that if the . . . Connecticut Company shall pay any costs or damages which may be incurred by any party who is found to have been wrongfully enjoined or restrained, then this obligation shall be void; otherwise, it shall remain in full force and effect." In addition, an order was issued directing the divisions and the agents to appear before the Superior Court on October 24, 1957, to show cause why a permanent injunction and a permanent decree of specific performance should not be issued.

The divisions and agents of the union filed a motion in the Superior Court to erase the action and to dissolve and terminate the temporary injunction and the temporary decree of specific performance. On October 24, the Superior Court dissolved and terminated the temporary injunction. Thereafter, the parties entered into negotiations which resulted in a settlement of their dispute in an agreement dated November 1, 1957. On December 21, 1957, the parties by their attorneys filed a written withdrawal of the Superior Court action, reciting in the

withdrawal that it was without prejudice to the rights of the divisions and agents of the union, the plaintiffs in the present action.

This suit was instituted in April, 1958, in the Court of Common Pleas, to recover on the bond. The complaint alleged that the company failed to prosecute the Superior Court action to effect and that these plaintiffs had sustained damages of $5326.45 for counsel fees, expenses and wages lost as a result of the issuance of the temporary injunction and in vacating it and that demand had been made upon the company for payment and it was refused. The trial court found that the bills totaling $4732.92 for legal services and expenses of the attorneys for the union divisions and agents in the litigation were fair and reasonable; that the officers and agents lost time from their employment and were reimbursed $500 by the union for wages lost, a fair and reasonable sum; and that fair and reasonable incidental expenses amounting to $93.53 had been incurred, including the cost of printing notices to cancel the strike in conformity with the temporary injunction. The court also found that the company had not prosecuted the Superior Court action to effect. The court stated as a conclusion that it did not find that the union divisions and agents had been wrongfully enjoined. It also concluded that they had acquiesced in any neglect to prosecute the Superior Court action to effect, that they had sustained no loss from the failure to prosecute, and that they were not entitled to recovery under the terms of the bond.

There has been no claim advanced by the company that the conflict in the interpretation of the cost-of-living adjustment clause in the supplemental agreement of 1955 did not constitute a "labor dis-

pute" as that term is defined in General Statutes § 31-112 (c). See *Devine Bros., Inc.* v. *International Brotherhood,* 145 Conn. 77, 80, 139 A.2d 60. The jurisdiction of a court or judge to issue an injunction in a labor dispute is controlled by the provisions of §§ 31-113, 31-115, 31-116. The last two sections set out the procedure which must be followed before an injunction in a labor dispute can be issued. With the exception of a temporary injunction, which, effective for three days, can be issued under certain circumstances, not present in this case, no injunction, temporary or permanent, can be issued in a labor dispute until notice of hearing has been given to the adverse parties and a full hearing had in open court, with opportunity for both sides to present testimony and cross-examine witnesses. In addition, a finding of facts must be made by the judge and filed in court prior to the issuance of the injunction. The temporary injunction which was obtained by the company was issued ex parte, without notice to the union, without a full hearing of both sides and without a finding of the facts upon which the injunction could be based. It was not ancillary to other relief but was the principal relief sought. 2 High, Injunctions (4th Ed.) § 1686. That the union divisions and agents were wrongfully enjoined is an inescapable conclusion. The finding of the trial court is corrected to include the conclusion that the plaintiffs in this action were wrongfully enjoined. The subordinate facts in the finding do not support the conclusions that these plaintiffs acquiesced in any neglect to prosecute the injunction action to effect; that they suffered no harm or losses by reason of the failure of the company to prosecute that action to a conclusion; and that the damages claimed in the present action are not re-

coverable. The finding is corrected by striking those conclusions.

The bond which was approved by the judge before the temporary injunction was issued was conditioned to "pay any costs or damages which may be incurred by any party who is found to have been wrongfully enjoined or restrained." As the plaintiffs were wrongfully enjoined, they are entitled, under § 52-238, to recover such damages as are "equitably due," which we have construed to mean "justly due." *First National Bank & Trust Co.* v. *McCoy,* 124 Conn. 111, 113, 198 A. 183; see *Lawton* v. *Herrick,* 83 Conn. 417, 427, 76 A. 986; *Allen Mfg. Co.* v. *Administrator,* 139 Conn. 402, 409, 94 A.2d 608. The trial court found that all the services and expenses which were incurred by the plaintiffs and for which reimbursement was sought were a result of the litigation instituted by the company and were fair and reasonable in amount. The litigation included not only the temporary injunction and the application for it but also the claim for a permanent injunction and for a decree of specific performance of the labor agreement. In addition, a rule to show cause why the temporary injunction should not be made permanent was issued.

In 1886, the New Jersey Court of Chancery, in *Cook* v. *Chapman,* 41 N.J. Eq. 152, 156, 2 A. 286, enunciated a rule governing the recovery of damages upon bonds conditioned similarly to the one in issue. A like rule prevails in most jurisdictions throughout the country. Note, 164 A.L.R. 1088, 1090. A quotation from the New Jersey case is pertinent and appropriate: "It is a cardinal rule of the law of damages that whenever loss results to one person naturally and directly from the illegal act of another, such loss is the proper subject of

judicial relief by compensation in damages. Now, whenever an injunction is unfairly obtained, the defendant is put under a restraint which he ought not, in justice, to have been required to bear; in other words, the complainant procures the court to restrain him from doing something, which the complainant has no right, according to the truth and right of the case, to have him restrained from doing. In this condition of affairs, the defendant must submit to a deprivation of his rights, or take the necessary steps to have himself relieved from the restraint. To get rid of the injunction, he must have the aid of counsel. Such are the means usually, if not universally, resorted to to obtain relief in such cases, and no prudent suitor would think of having recourse to any other. The defendant's outlay, then, for counsel fees is the direct consequence of the complainant's act—the immediate effect of a cause created by the complainant. The outlay is one which the complainant knows, when he gives his bond, that the defendant must make or suffer himself to be deprived of his rights. The complainant's obligation is to pay the defendant any damages which he may sustain by reason of the injunction. Now, if the complainant, when he obtains an injunction, has no right to it, and that fact cannot be demonstrated to the agency having power to continue or dissolve the injunction without an expenditure of money by the defendant, it would seem to be tolerably clear, as a matter of logic, that the moneys expended by the defendant for that purpose would constitute a part of the loss he would sustain by reason of the injunction. Indeed, that part of his loss could, in most instances, be traced to the injunction with more absolute certainty than any other.

"Where the act of a complainant makes it necessary for a defendant to expend his money to rid himself of an illegal or unjust restraint, the loss thus suffered is an actual damage which the defendant has sustained by reason of the restraint. There is a wide distinction between the rights of a defendant under a contract of this kind and those of a successful defendant without such contract. The latter, as a general rule, is not entitled to recover counsel fees. The law gives him no such right. But here the rights of the parties are regulated by contract. The contract is free from the least obscurity and its meaning perfectly plain. Read according to the plain sense of its language, it is manifest that it was intended to embrace any outlay which the defendant should be compelled to make to get rid of a restraint which the court refused to lay upon the defendant except upon condition that the complainant should agree to make good to him any damages he should sustain in consequence of the restraint, if it should ultimately turn out that the complainant was not entitled to have him restrained. Under such circumstances the court cannot allow itself to be controlled by legal analogies, but is bound to enforce the contract according to its terms, regardless of the difficulties which may attend the discharge of that duty. It is obvious that the court does not require that a bond shall be given in such cases merely to secure the payment of taxed costs. They are always under the control of the court, and the court has ample power to enforce any order it may deem proper to make in respect to them. . . . [T]he defendant is entitled to recover such sum as he was necessarily obliged to pay for counsel fees in procuring a dissolution of the injunction."

The general rule for measuring damages ordinar-

ily applies to the recovery of damages for wrongfully suing out a temporary injunction. 28 Am. Jur. 857, § 343. The allowance of damages should rest on equitable principles and should represent the losses actually sustained as a result of the injunction. 43 C.J.S. 1091, § 309. The damages should include a reasonable allowance for the attorneys' fees necessarily incurred in the procuring of the dissolution of the temporary injunction. 43 C.J.S. 1099, § 315 (f); Restatement, Security § 196; *State ex rel. Shatzer* v. *Freeport Coal Co.,* 107 S.E.2d 503, 506 (W. Va.). The bills for legal services rendered the plaintiffs include both local and out-of-state counsel. The need for the services of attorneys not admitted to practice before the courts of this state is not apparent on the record before us. It does not appear that the Superior Court permitted them, upon motion of local counsel, to take part in the argument on the motion to dissolve the temporary injunction. Without such permission, to be granted only when reasonably necessary, the plaintiffs would not be entitled to reimbursement for the services of those attorneys, especially since competent local counsel appeared for the plaintiffs. See General Statutes § 51-88; *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 235, 140 A.2d 863. In any event, whether the services of all of these attorneys were reasonably necessary must be determined by the trial court. If it so finds, recovery is limited to reasonable compensation for the services rendered in the procuring of the dissolution of the temporary injunction. The other items claimed for expenses and disbursements can be allowed only so far as they are just, reasonable and necessary in the procuring of that dissolution. The broad extent of the trial court's finding that the

items for services and expenses resulted from the litigation instituted by the company renders it necessary to remand this case for a hearing in damages.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover of the defendants such costs and damages as are found to be equitably due in accordance with this opinion.

In this opinion the other judges concurred.