## City of Hartford *v.* Public Utilities Commission
### Et Al.

Court of Common Pleas    Hartford County    File No. 106824

Memorandum filed August 20, 1973

*Alexander A. Goldfarb,* corporation counsel, for the plaintiff.

*Robert K. Killian,* attorney general, and *Frederick D. Neusner* and *Richard L. Barger,* assistant attorneys general, for the named defendant.

*Lewis H. Ulman, William J. O'Keefe* and *Judith A. Maynes,* all of New Haven, and *Greenfield, Krick & Jacobs,* of New Haven, for the defendant Southern New England Telephone Company.

BIELUCH, J. On November 5, 1971, the defendant The Southern New England Telephone Company, hereinafter called SNETCO, under Docket No. 11200 filed a proposed amendment of its rate schedule with the defendant public utilities commission, hereinafter called PUC, in accordance with § 16-19 of the General Statutes. After holding hearings on the proposed rates, the PUC authorized an increase. The city of Hartford, hereinafter called Hartford, appealed from this order and on May 8, 1972, obtained ex parte from a judge of this court "[p]ursuant to Section 16-39 of the General Statutes, as amended," an "Order of Supersedeas" staying the action of the PUC pending a full hearing and determination on the merits of the appeal. The PUC moved to vacate this stay, alleging, inter alia, that the appeal was brought under title 16 ("Public Service Companies") "as amended by the supervening authority" of Public Acts 1971, No. 854 (General Statutes, c. 54), the Uniform Administrative Procedure Act, hereinafter designated UAPA; that prior to the adoption of Public Act 854, § 16-39 provided that such an appeal shall be a supersedeas of the decision appealed from; and that, since no order of supersedeas would be required if § 16-39 were still in effect, it must be concluded that the

judge issued his "Order of Supersedeas" under the authority of § 18 (c) of Public Act 854, now § 4-183 (c) of the General Statutes, which requires an order of supersedeas for a stay. SNETCO similarly moved for a dissolution, but only claimed "illegality" and "irreparable harm." Thereafter, on May 11, 1972, after deciding that the order of supersedeas would result in irreparable injury to SNETCO, the judge ordered the new rates to become effective, subject to SNETCO's keeping complete and accurate records of the additional revenues and a refund with interest of all overcharges, if any, which the court may find on completion of the appeal. The filing of a bond to guarantee such repayments was not required.

A bond for payment of costs in the event the appeal is not sustained was fixed by the PUC under § 16-35 of the General Statutes in the amount of $250 and filed by Hartford in that amount. SNETCO now asserts that its costs to date for compliance with the order of May 11, 1972, are in excess of $350,000 and continue to accrue at the rate of $11,500 per month. For this reason, SNETCO has moved the court to require Hartford "to file an additional bond with sufficient surety in the amount of $500,000 to pay all costs in case it fails to sustain its appeal."

The question before the court is of exceptional and decisive importance. Its precedential value could have great bearing on the future course and trend of appeals from the PUC. Appeals to the courts from administrative boards and agencies exist only under statutory authority. *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 560. The statutory prescriptions governing appeals in public utility cases must be strictly observed. *Hohensee* v. *Pennsylvania Public Utility*

*Commission,* 3 Pa. Cmwlth. 390, 283 A.2d 503, 504. Hartford's appeal was taken under our General Statutes, title 16, "Public Service Companies," chapter 277, "Regulation and Supervision," and yet it deviated therefrom by seeking an order of supersedeas in the manner required by title 4, "Management of State Agencies," chapter 54, "Uniform Administrative Procedure Act," adopted as Public Acts 1971, No. 854, effective January 1, 1972.

Section 16-39 provides: "Each such appeal shall be a supersedeas of the order, authorization or decision appealed from, provided the court to which any such appeal is brought, or, if such court is not in session, any judge of the court of common pleas may, at any time, order that such appeal shall not so operate if, in the opinion of such court or judge, the appeal is brought for purposes of delay or if justice or equity or public safety or expediency so requires; or such court or judge may order that such appeal shall so operate only upon compliance by the parties, or any of them, with such terms or conditions as such court or judge may determine." In an appeal under the UAPA, however, it is provided contrariwise in § 4-183 (c) : "The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms." Under the former, the order of supersedeas would be superfluous, but the subsequent order of refund accountability would be permissible on dissolution of the supersedeas or stay under both statutes. The provision in each for a conditional stay is deemed to include an implied power in the court to grant a conditional dissolution. See *Chicopee Mfg. Co.* v. *Public Service Co.,* 97 N.H. 553, 554.

Initially, the court must resolve which of these statutes applies here. Public Acts 1911, chapter 128,

the origin of title 16, chapter 277, contained in § 33 the first provision for an automatic supersedeas or stay in substantially the form of § 16-39 today. The enactment of the UAPA sixty years later has cast a long shadow upon this well-established procedure. Sections 16-39 and 4-183 (c) are diametric contradictions in terms. The question of their compatibility as law must be determined by the legislative intent in the recent adoption of the UAPA. Public Acts 1971, No. 854, provided in its concluding sections as follows: "Sec. 20. Sections 4-41 to 4-50 inclusive, and section 51-22 of the general statutes and other provisions in the general statutes which are inconsistent with the provisions of this act are repealed. Sec. 21. This act shall take effect on January 1, 1972, and, except as to proceedings then pending, applies to all agencies and agency proceedings not expressly exempted." The statutes enumerated in § 20 pertained to the adoption and publication of state agency regulations. Left for consideration, therefore, is the general repealer provision in that section as well as the general applicability clause of § 21. Public Act 854 had its origin in the Revised Model State Administrative Procedure Act (1961) proposed by the National Conference of Commissioners on Uniform State Laws and endorsed by the American Bar Association. While § 21 of Public Act 854 parallels § 19 of the model act, § 20 varies materially from its source in § 18 of the proposal, which reads in its entirety: "The following acts and parts of acts are repealed: . . . ." The model act comment to this repeal provision makes the following observation: "The preparation of this section will require careful and detailed work in each state. General repealers will ordinarily not suffice, and hence attention must be paid to each agency enabling act and the changes necessary therein."

Other enactments of the 1971 and 1973 sessions of the legislature shed light on its intent in the adoption of the UAPA. Public Acts 1971, No. 621, although vetoed by the governor, is still relevant in its legislative consideration and action. Section 1 thereof amended § 16-19 of the General Statutes to give public utilities the right to opt for immediate collection of a designated portion of a proposed increase on the filing with the PUC of an assurance or surety bond to guarantee refunds of payments later found to be excessive. Section 3 waived the supersedeas of § 16-39 to such opted increases in rates. Public Act 621 was passed by the house of representatives on the same day as Public Act 854 and by the senate one day earlier than the latter act. Still further, Public Acts 1971, No. 870, in § 42 transferred jurisdiction of appeals under § 16-35 from the Superior Court to the Court of Common Pleas, and in § 43 similarly transferred the authority to cancel or condition the supersedeas of § 16-39. These provisions were approved by the house of representatives four days after Public Act 854 and by the senate five days before. The General Assembly at its 1973 Session further confirmed by its legislative action its original intent to separate § 16-39 from § 4-183 (c). Public Acts 1973, No. 73-342, authorized the PUC to adopt regulations in accordance with the provisions of the UAPA. The latest show of intent by the legislature was its enactment of Public Acts 1973, No. 73-653, which expressly provided that appeals from the PUC were to be taken under the UAPA, and by its terms repealed §§ 16-35 through 16-39. The governor vetoed this bill on June 27, 1973, principally, as his veto message stated, because the legislation would eliminate the "automatic stay against utility rate increases pending court appeals [and] . . . this bill would shift the burden of proof to the parties opposing a utility rate increase."

Subsequent enactments may throw light on the legislative intent of a former related act. *General Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242. The legislative intent in the adoption of the UAPA as related to the provisions for appeal from the PUC contained in title 16, chapter 277, is clearly illuminated by the contemporaneous enactments of 1971 and the subsequent legislative action of 1973. PUC appeals under chapter 277 and the automatic supersedeas of § 16-39 have not been changed by the UAPA. SNETCO's motion for additional bond, therefore, must be judged under the provisions of § 16-39.

The request for further bond for costs in the amount of $500,000 is without precedent or parallel in our jurisdiction. In brief, it is without authority. No right to a supersedeas exists except by virtue of express statutory authorization. *Case* v. *Hermitage Cotton Mills,* 236 S.C. 515, 532; 4 Am. Jur. 2d 840, Appeal and Error, § 366. Section 16-39 does not require the posting of a supersedeas bond for the stay to become initially effective, except that its continuance may be conditioned on such terms or conditions as the court or judge may determine. As noted earlier, there is implied in this authority the power to grant a conditional dissolution. The supersedeas here has been lifted. An order of refund accountability replaced it. There is, however, no authority, either express or implicit, in § 16-39 or any other provision of the law for demanding the appellant to guarantee the costs of refund accountability ordered by the court on dissolution of the supersedeas. Of analogical interest is the provision in § 16-19 for increases in rate schedules, delayed before the PUC, to become effective on discretion of the PUC upon the filing by the utility of assurance or a surety bond to guarantee refund accountability. In such situations there is, and could be, no stipula-

tion in the law for the cost of such accounting to the PUC to be borne by anyone other than the utility. This leaves the only line open to SNETCO to be the move taken by it.

The fundamental principle is that every litigant must bear his own expenses of litigation except as otherwise provided by statute. *Nesbit* v. *Rose-Hurst Farms, Inc.,* 8 Conn. Sup. 480, 482; see *Peterson* v. *Norwalk,* 152 Conn. 77, 80. Costs are the creature of statute, and unless the statute clearly provides for them courts cannot tax them. *Bissing* v. *Turkington,* 113 Conn. 737, 739; *Waterbury* v. *Macken,* 100 Conn. 407, 413; *Drive-In & Shop, Inc.* v. *Redevelopment Agency,* 24 Conn. Sup. 390, 391; *Granger* v. *Cezseus,* 9 Conn. Sup. 458, 459. Allowable costs in civil actions are itemized in § 52-257 of the General Statutes. Costs in equitable actions are discretionary. *Vilella* v. *McGrath,* 136 Conn. 645, 653–54; see General Statutes § 52-257 (which expressly reserves such discretion). The only justification which a court of equity has for passing that burden on to others is based upon the maxim "equality is equity." *Nesbit* v. *Rose-Hurst Farms, Inc.,* supra. A bond for prosecution or recognizance to cover the costs of the action is required before the issuance of process. General Statutes § 52-185; Practice Book §§ 29, 30. If the court in which any action is pending finds that any bond taken therein for prosecution, or on appeal, is inadequate, it shall order a sufficient bond. General Statutes § 52-186; Practice Book § 32. Hartford's claim that the fixing of the amount of the appeal bond by the PUC under § 16-35 controls this court is not well taken. Section 52-186 authorizes the court to review any bond on appeal set by the PUC.

SNETCO seeks to come within an exception to these general principles of taxing costs, relying

upon *Welles* v. *Schroeder,* 67 Conn. 257, 259, which holds: "In statutory proceedings as to which there is no provision of law or statute absolutely giving costs to the prevailing party, or as to which, if a judgment for costs is authorized, no specific costs are prescribed, and to which the statute regulating the costs taxable to a party who succeeds in a civil cause does not apply, the taxation of costs is a matter of discretion. *Smith* v. *Scofield,* 19 Conn. 534; *Canfield* v. *Bostwick,* 22 id., 270; *Dutton* v. *Tracy,* 4 id., 79, 95." The application of *Welles* to SNETCO's claim is inappropriate and ineffective. While Hartford's appeal is a statutory proceeding, § 16-35 gives costs to SNETCO, if it prevails, in the requirement that the appellant shall give bond, with surety, for the benefit of the adverse party "to pay all costs in case he or it fails to sustain such appeal." Although no specific costs are prescribed in § 16-35, § 52-257, governing taxable costs in civil actions, does apply. Illustrative of the application of the *Welles* rule is the court's holding in *Bridgeport Gas Co.* v. *United Mine Workers,* 21 Conn. Sup. 331, 332, vacating the taxation of costs: "There is no provision for the taxation of costs in the statutes regarding arbitration proceedings, nor in the rules of practice pertaining to judgments confirming, modifying or correcting an arbitration award or to an order vacating an award. Rev. 1958, § 52-420; Practice Book . . . [§ 446]. The application to vacate an award is a special proceeding, authorized by statute. *Boltuch* v. *Rainaud,* 137 Conn. 298, 301. The order of the court in the present case is silent as to taxation of costs to either party. For this reason, no costs should have been taxed to the plaintiff."

We are left with the sole question whether what SNETCO seeks to cover is a taxable cost under § 52-257. "The term 'costs of court' has 'a known technical meaning, as well understood by lawyers

as the term *suit* or *prosecution.*' " *Drive-In & Shop, Inc.* v. *Redevelopment Agency,* 24 Conn. Sup. 390, 391, citing *Norwich* v. *Hyde,* 7 Conn. 529, 534, where the court said further: "The expression does not mean all the expenses incurred; but it means the expenses *pending the suit,* as allowed or taxed by the court. Lord *Coke* says, costs are *expensae lites,* and shall be allowed for expenses *pending the suit. Pelford's* case, 10 *Co.* 117." What SNETCO is seeking by its motion for additional bond is security for payment or indemnification of expenses necessitated during the pendency of the appeal by the order of refund accountability in the event Hartford fails to sustain its appeal. Neither § 52-257 nor any other law or rule authorizes such an item to be recovered, be it called cost, damage or indemnification. An example of what SNETCO is attempting to obtain may be shown by reference to § 52-472 of the General Statutes, which requires a surety bond, on the issuance of a temporary injunction, "to answer all damages" in case the plaintiff fails to prosecute the action to effect. In *Division 163* v. *Connecticut Co.,* 148 Conn. 563, the court (p. 573) remanded the action with direction to allow recovery of "costs and damages," holding, at pages 571–72, that the general rule for measuring damages should apply to allow recovery of "losses actually sustained as a result of the injunction." SNETCO's alleged possible claim for expenses incurred to secure refund accountability as ordered by the court has no such statutory or other legal basis for recovery.

SNETCO's motion to require additional bond is, therefore, overruled.