## The Allen Manufacturing Company v. Administrator, Unemployment Compensation Act

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 7, 1952—decided January 20, 1953

*John S. Murtha,* with whom was *Sidney D. Pinney, Jr.,* for the plaintiff.

*Harry Silverstone,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the defendant.

BALDWIN, J. The plaintiff corporation, an employer subject to the Unemployment Compensation Act, seeks to recover overpayments in its contributions to the unemployment compensation fund for the years 1950 and 1951. It claims that these overpayments were made because the defendant failed to allow certain rehiring credits which would have reduced its rates of contribution and that this constituted error which, under the law, entitles it to a refund. The defendant filed an answer in which he stated, in substance, that the failure to allow the rehiring credits was due to the fault of the plaintiff and that a correction of the error and a refund of the overpayments would require a complete redetermination of the rates of all other affected employers and would result in an unjust diminution of the unemployment compensation fund. The plaintiff demurred on the ground that the correction and the refund were mandatory. At the request of the parties, the case was reserved for the advice of this court and for an answer to each of the four questions set forth in the footnote.[1]

---

[1] "1. Was there an error within the meaning of Section 7498 (b) in the establishment by the Administrator of the plaintiff's contribution rate for the calendar year 1950?

"2. Was there an error within the meaning of section 7498 (b)

The stipulation of facts may be stated as follows: On March 27, 1950, the defendant, acting pursuant to § 7498 of the General Statutes, established the rate of contribution payable by the plaintiff to the unemployment compensation fund for the year 1950 at 1.4 per cent of the plaintiff's payroll. Likewise, on March 19, 1951, the defendant established the plaintiff's rate of contribution for the year 1951 at 2.25 per cent. These rates were based upon the plaintiff's "merit rating index" for the "experience period" ending June 30, 1949, and June 30, 1950, respectively. During these "experience periods," the plaintiff had rehired certain separated employees within seven weeks after they had begun to receive unemployment compensation benefits and therefore was entitled to credits on its merit rating account under the provisions of § 7498 (c) (2). These credits, however, were not allowed by the administrator for reasons stated below. If the merit rating account had been so credited, the plaintiff's rate of contribution in 1950 would have been 1.3 per cent instead of 1.4 per cent, and in 1951, 1.95 per cent instead of 2.25 per cent. The higher percentages which were applied resulted in an overpayment of $1435.09 in

in the establishment by the Administrator of the plaintiff's contribution rate for the calendar year 1951?

"3. Is defendant required by the provisions of section 7498 (b) to correct plaintiff's rates of contribution to the Unemployment Compensation Fund for the calendar years 1950 and 1951 by allowing the credits to which plaintiff was entitled under the provisions of section 7498 (c) (2) for the fiscal years ending June 30, 1949 and June 30, 1950?

"4. Is defendant required by the provisions of section 7539 to refund to plaintiff the amounts of $1,435.09 and $5,478.77 paid by plaintiff to defendant for said calendar years 1950 and 1951 by reason of plaintiff's merit rating account for the fiscal years ending June 30, 1949 and June 30, 1950 not being credited with the credits to which it was entitled under the provisions of section 7498 (c) (2)?"

1950 and $5478.77 in 1951. During each year, with every notice of a compensable separation charged against the plaintiff's account, the defendant sent to the plaintiff forms upon which it could claim credit if the separated employee was rehired within seven weeks. On February 7, 1950, and on January 23, 1951, in preparation for the establishment of the rate of contribution to be paid by the plaintiff for the current year and to verify charges against the plaintiff's accounts, the defendant forwarded to the plaintiff a "Statement of Merit Rating Compensation Separation Charges and Credits." These statements set forth the names of all employees separated during the year and charged against the plaintiff's account. They did not show any of the credits for rehiring now claimed by the plaintiff. At that time the defendant did not know that the plaintiff was entitled to such credits. The plaintiff failed to notify the defendant, before the time when, in each year, the defendant fixed the rates of contribution to be paid by the plaintiff and all other employers, that the statements did not contain the credits.

On April 11, 1951, in the course of a spot audit, the defendant discovered that the plaintiff had not been given the credits to which it was entitled during the years 1950 and 1951. The plaintiff has requested the defendant to correct its rates of contribution by giving effect to the credits and to refund the amount of the overpayments. This the defendant has refused to do. The assignment to the plaintiff of higher rates than it would have been charged if the credits had been allowed did not enrich the compensation fund. This was because the establishment of the plaintiff's rates for the years in question affected the establishment of the rates of contribution of other employers subject to the provisions of the act,

and the total paid into the fund was not increased by the plaintiff's overpayments. The defendant has not promulgated any regulations requiring employers subject to the act to give him notice of credits claimed under § 7498 (c) (2). He concedes that the plaintiff has made the overpayments claimed. He refuses to make a refund because to do so would require a complete redetermination of the experience payroll of other affected employers, which would be inequitable and impracticable. Unless there was such a redetermination, the repayments would result in an unwarranted diminution of the fund. The defendant claims that under § 7498 he is only required to correct errors which he or his agents have made, that the error now claimed is due to the fault of the plaintiff and that, under these circumstances, the law does not require him to correct the error and, thereafter, to refund the overpayments.

The method of determining the rate of contribution of each employer to the fund is technical and complicated. General Statutes, § 7497, requires that an employer, under the act, pay into the fund annually, in quarterly instalments, at the rate of 2.7 per cent of the wages paid or payable by him during each calendar year. However, employers who have been subject to the act for at least three years are entitled to an "experience" or "merit rating" which permits them to contribute at a lower rate. § 7498. The law requires the administrator to fix, each year, a "merit rating index" for each employer. This index is the quotient obtained by dividing his "experience payroll" (the total of wages paid or payable by him during the preceding three years, which three years are called the "experience period") by the "rated amount of the compensable separations" charged against his merit rating account during the

same time. The "rated amount" of compensable separations is the total benefit rates for each continuous period of unemployment of all of the separated employees of an individual employer. § 7498 (a), (c). An employer, however, is entitled to a credit which will reduce the amount of the total benefit rates if, after an employee has been separated from his payroll, he rehires him within the succeeding seven weeks. § 7498 (c) (2). Consequently, if an employer has few separations, or if the employees separated are rehired within seven weeks, or if the benefit rates of the employees separated are low, his "rated amount" of compensable separations would be smaller than that of an employer who has had more separations or fewer rehirings or higher benefit rates.

All of the merit rating indices having been determined for each one of several thousand employers subject to the act, the defendant is next required to fix a rate of contribution payable by each one. § 7498 (b). All of the rates of all of the employers must be set at a level that will produce a tax return sufficient to maintain the integrity of the fund. To accomplish this, the act provides that all rated employers be separated into thirteen classes, the total amount of the payrolls of the employers in each class being substantially equal to those in each of the other classes. The employers with the least favorable merit indices are placed in the first class. All the others are arranged in gradation, those having the most favorable indices being places in the thirteenth class. The statute prescribes a rate for each class. There are five schedules of rates. The schedule which is used depends upon the balance in the unemployment compensation fund. It is obvious, then, that the rate of contribution assessed against

each employer is not only affected by his own employment record but also by the relation that his record bears to the records of all the other employers in the state. If an alteration is made so that one employer pays less, then other affected employers must pay more, in order that the total amount required to be collected for the fund will not be reduced. A recomputation for one employer, after the rates have been fixed, would require a recomputation for a number of other employers. The limit of that recomputation would depend upon the amount of the overcharge or the undercharge involved.

The plaintiff's claim for a correction of the error is based upon that portion of § 7498 (b) which reads as follows: "If, after the contribution rates for a twelve-month period have been so established by the administrator, errors shall be discovered, such errors shall be corrected by the methods found by the administrator to be the most equitable, with or without the complete redetermination of the aforementioned thirteen parts of the total experience payroll, as the administrator may decide." This provision must be read together with §§ 7538 and 7539.[1] All three were enacted in substantially their present form at the same time, as amendments to the

---

[1] "Sec. 7538. ADJUSTMENT OF ERRORS. The administrator may make and publish regulations providing that if, through error and without fraudulent intent, more or less than the correct amount of contributions shall have been paid with respect to employment during any period, adjustments may be made without interest in computing contributions due and payable with respect to employment during subsequent contribution periods, or otherwise, within such time limits and subject to such conditions as the administrator shall prescribe.

"Sec. 7539. REFUNDS AND DEFICIENCIES. If more or less than the correct amount of contributions imposed shall have been paid with respect to employment during any period and if such overpayment or

original act adopted in 1936. General Statutes, Cum. Sup. 1939, §§ 1337e (b), 1345e (d), (e). A reading of them makes it readily apparent that the legislature was aware of the complicated and technical nature of the method for fixing the rates of contribution to the fund and that it intended to provide adequate means to deal with errors which must have seemed inevitable. The portion of § 7498 (b) quoted above deals only with the correction of errors. It contains no directions for the refund of any amount overcharged or for the collection of any amount found to be due as the result of any undercharge. It vests the administrator with authority to correct errors by methods found by him to be most equitable. He could, in the reasonable exercise of his discretion, make a complete redetermination. This could result in an upward adjustment of the rate of contribution for some employers, in order to provide for the reimbursement of other employers who had been overcharged. As used in the statute, the word "equitable" means what is fair and just under the circumstances, not only for the employer who seeks a refund of the claimed overpayment but for those who may have underpaid and who may be called upon to make further payments. See *Norwalk* v. *Connecticut Co.*, 89 Conn. 537, 543, 94 A. 988. Much would depend upon the extent of the readjustment required to correct the error. If, for example, one

underpayment cannot be or is not adjusted under section 7538, the amount of the overpayment shall be refunded to the employer from the contribution account of the unemployment compensation fund or the amount of the underpayment shall be paid by the employer to the administrator at such time as the administrator shall prescribe, provided no refund shall be made which would be contrary to the requirements of the Social Security Act or any amendments thereto. Any refunds of interest paid into the employment security special administration fund established by section 7529 shall be paid from said fund."

or more employers were grossly overcharged and this meant a gross undercharge for others, a general redetermination of those specifically affected might be the fairest way of dealing with all. The decision as to the method of making the correction is left to the reasonable discretion of the administrator.

Once an error is found and corrected, §§ 7538 and 7539 give authority to compensate it. The defendant states in his brief that he did correct the error to the extent of allowing the rehiring credits in so far as they reduced compensable separation charges for future periods. He could readily do this because each compensable separation charge is a factor for a period of three years, or so long as the year in which it is a credit is one of the three years which compose the "experience period." He concedes that pursuant to the provisions of § 7498 he has corrected and does correct errors which may have occurred in the establishment of rates of contribution, when discovered, and that he has made and does make refunds to correct such errors, but that he does so only in those cases where he finds that he himself or his agents have committed an error in the establishment of the rates. In taking this position, he misconceives his powers and his responsibilities under the act. Section 7538 empowers the administrator to make regulations providing that if, through error and without fraudulent intent, more or less than the correct amount of contributions shall have been paid for any period, adjustments may be made in computing contributions due and payable during subsequent periods, within such time limits and subject to such conditions as the administrator shall prescribe. We do not consider this section because it does not appear that the administrator has made and published any regulations pursuant to it.

Section 7539 states that, if more or less than the correct amount of contributions imposed shall have been paid and such overpayment or underpayment cannot be or is not adjusted under § 7538, the overpayment shall be refunded to the employer from the contribution account, or the amount of the underpayment shall be paid by the employer to the administrator at such time as he shall prescribe. This statute creates a wide latitude within which the administrator can make adjustments. As has been pointed out, the determination of the rate of contribution involves many factors and is extremely complicated. It admits of the possibility of errors which might work a real hardship upon employers, both small and large. While in the case at bar the error was one which came about largely through the failure of the plaintiff to heed the instructions given by the defendant, there is nothing in the act which indicates that a correction should be denied or a refund refused on the basis of fault. If the case were to be decided upon the basis of § 7498 alone, it might well be that the equities should be considered as favoring the defendant in denying any correction for the years 1950 and 1951. However, we cannot consider § 7498 alone. We are not at liberty to disregard the plain provisions of § 7539. It is the intendment of the legislature, as unequivocally expressed in § 7539, that, if an adjustment is not made or cannot be made under § 7538, all overpayments into the fund must be repaid except in the one instance, not here applicable, when such a refund would be contrary to the Social Security Act. The administrator, in accordance with § 7498, may, in correcting the error, adopt the method which he deems most equitable. That lies within his discretion. But he must make compensation for any over-

charge, either by the means available to him under § 7538 or, failing that, by repayment as provided in § 7539.

The defendant claims that there was no error because the rate was computed upon the facts made available to him by the plaintiff. He argues that the plaintiff's failure to make timely claim for the re-hiring credits resulted in the use of inaccurate factors in establishing the rate and that this was an oversight for which the plaintiff was responsible. If a correction or a refund must depend upon any distinction that the administrator may draw between an error and an oversight, there is no limitation upon the possible unreasonable results which may ensue. The defendant points out that the rate of eight other employers will be affected by any correction in the plaintiff's rate for the years 1950 and 1951. He argues that the claimed refunds are comparatively small in relation to the total amount of contributions to the fund. If this were recognized as a controlling factor, it would eliminate any definite restriction either as to the number of other employers affected by the correction of the error or as to the amount involved. It may well be that the equities in this case speak loudly for the defendant, but we must look beyond the horizon which the facts and circumstances of this particular case permit us to view. We are dealing with an act of the legislature which has a wide application. We are bound to consider the general field of its operation, not only in connection with this case but in connection with future cases. We must give to its provisions concerning the correction of errors and refunds an interpretation that will ensure their uniform and effective operation rather than attempt a desirable solution in the instant case. *H. Duys & Co.* v. *Tone,*

125 Conn. 300, 311, 5 A.2d 23. No undue burden is placed upon the administrator by the course we have prescribed. Within the framework of the act, he has powers of regulation broad enough to obviate the difficulties he now foresees. General Statutes § 7522. He points out in his brief, for example, that an employer could sleep on his right to a refund for years without limit. Section 7538, however, expressly authorizes him to place a time limit upon such claims.

The defendant cites *Savings Bank* v. *Wilcox,* 117 Conn. 196, 167 A. 713, and *Pitt* v. *Stamford,* 117 Conn. 388, 167 A. 919, to the effect that a taxpayer cannot recover an overpayment of taxes which came about through an oversight or a mistake on his part. Those cases are not in point here. They were decided upon equitable principles. The instant case is decided upon the interpretation of legislation which specifically provides for the correction and adjustment of errors.

The answer to questions 1, 2 and 4 propounded in the reservation is "Yes." As to question 3, the defendant was under a duty to allow the rehiring credits claimed by the plaintiff in so far as they might affect the rate of contribution chargeable to it in subsequent years. As to the years 1950 and 1951, the defendant, not having made an adjustment as provided in § 7538 of the General Statutes, is required to make a refund as required by § 7539.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.