UNITED AIRCRAFT CORPORATION *v.* JACK A. FUSARI, LABOR COMMISSIONER

COTTER, RYAN, SHAPIRO, LOISELLE and MACDONALD, Js.

Argued June 9—decided July 12, 1972

*William G. DeLana,* with whom, on the brief, were *Charles W. Page, J. Danford Anthony, Jr.,* and *Paul F. McAlleney,* for the plaintiff.

*Carl D. Eisenman,* special assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the defendant.

COTTER, J. The plaintiff, United Aircraft Corporation, an employer subject to the Unemployment Compensation Act, seeks to recover alleged overpayments in its contribution to the unemployment compensation fund. It is the plaintiff's claim that the defendant's predecessor, the administrator of the Unemployment Compensation Act of the state of Connecticut, erroneously interpreted and applied § 31-226 of the General Statutes, Revision of 1958,

as amended, in computing the plaintiff's tax or unemployment contribution rate for the years 1968 and 1969, resulting in the determination of an erroneous tax or contribution rate for the plaintiff and in the payment by the plaintiff of excess taxes in those years.

At the request of the parties, the case was reserved pursuant to General Statutes § 52-235 for the advice of this court and for an answer to each of nine questions. Only those questions we find relevant to a disposition of this case are set forth in the footnote.[1]

The facts as contained in the stipulation between the parties, and the summary of facts in the plaintiff's brief which are not in dispute, may be stated as follows: The plaintiff is a Delaware corporation with an office and principal place of business in East Hartford, Connecticut. During the years 1968 and 1969 it was subject to the provisions of the Connecti-

---

[1] "1. For such years as the plaintiff's experience payroll is spread among three parts upon division of the total of the experience payrolls of all eligible employers into thirteen exactly equal parts, does Section 31-226 of the General Statutes of Connecticut, Revision of 1958, as amended, direct the defendant to allocate the plaintiff's experience payroll to the lowest numbered of such three parts for purposes of determining such employer's tax or contribution rate under Chapter 567 of the General Statutes of Connecticut, Revision of 1958, as amended?

"2. If the answer to question 1 is 'No,' should the plaintiff's experience payroll for each of the years 1968 and 1969 be allocated, for purposes of determining the tax or contribution rate of such employer under Chapter 567 of the General Statutes of Connecticut, Revision of 1958, as amended, so that the total of the experience payrolls of all eligible employers, is divided (i) into thirteen parts, (ii) into thirteen parts which are approximately equal, and (iii) in a manner such that the experience payrolls of all eligible employers with a merit rating index lower than the plaintiff are allocated to parts with a higher tax or contribution rate, Parts 1 through 9, and the experience payrolls of all eligible employers with a merit

cut Unemployment Compensation Act. The defendant is the duly appointed and qualified administrator of the Unemployment Compensation Act and as such is charged with its administration.

Each employer subject to the unemployment compensation law is required under § 31-225 (a) to pay a tax equal to 2.7 percent of the wages paid by it with respect to employment,[2] subject to any applicable adjustment in the rate of contribution as

rating index higher than the plaintiff are allocated to parts with a lower tax or contribution rate, Parts 11 through 13, and plaintiff's experience payroll is allocated to Part 10?

"3. If the answer to question 2 is 'No,' should the plaintiff's experience payroll for each of the years 1968 and 1969 be allocated, for purposes of determining the tax or contribution rate of such employer under Chapter 567 of the General Statutes of Connecticut, Revision of 1958, as amended, to each of the three parts among which such experience payroll is spread upon division of the total of the experience payroll of all eligible employers into thirteen exactly equal parts?

"4. Is the plaintiff entitled to a refund of tax, with interest thereon, for the calendar years 1968 and 1969?

. . . . .

"7. Was the defendant correct in construing the phrase 'between two of the parts' used in Section 31-226 of the General Statutes of Connecticut, Revision of 1958, as amended, as if it read among two or more of the parts, and was the defendant correct in construing the word 'lower' in the same statute, as if it read 'lowest'?

"8. Would the following alternative method of computing the plaintiff's tax or contribution rate be within the provisions of Chapter 567 of the General Statutes of Connecticut, Revision of 1958, as amended, under the facts of this case: When the plaintiff's entire experience payroll is divided among three parts it is to be placed into only two parts, placing that portion of the payroll falling in Part 10 into Part 9, and that falling into Part 11 into Part 10?"

[2] "[General Statutes] Sec. 31-225. CONTRIBUTIONS BY EMPLOYERS. (a) Each employer who is subject to this chapter shall pay to the administrator contributions, which shall not be deducted or deductible from wages, equal to two and seven-tenths per cent of the wages paid by him with respect to employment subject to the adjustment in the rate of contributions as provided in section 31-226."

provided in § 31-226.[3] Under § 31-226, if, on June thirtieth of any year, the balance in the unemployment compensation fund is at least 1.25 percent of the total state payroll for the three-year period ending on June 30, the defendant is required to adjust the rate of contributions. When an adjustment is made the employer will pay a tax measured by the adjusted rate rather than the base rate of 2.7 percent.

---

[3] Pertinent portions of § 31-226 follow:

"[General Statutes] Sec. 31-226. MERIT RATING INDEXES. (a) If, on June thirtieth of any year, the balance in the unemployment compensation fund is at least one and one-quarter per cent of the three-year payroll, the administrator shall compute a merit rating index for each eligible employer with respect to the whole of the three-year period ending on such June thirtieth, hereinafter called the experience period. An eligible employer shall be one who has been subject to this chapter for the three-year period ending on such June thirtieth except that an employer who has not been subject to this chapter for a period of three years shall be deemed to have met this requirement if he has been subject to this chapter for a period of at least one year ending on June thirtieth and who on the following September thirtieth has filed all required contribution reports and has paid contributions on all wages so reported, and has paid any other contributions assessed against him, unless an appeal from such assessment has been taken or the time for such appeal has not yet expired. As used in this chapter, an employer's 'experience payroll' means the aggregate amount of wages reported by such employer during the whole number of years within such experience period, including only wages with respect to which contributions have been paid or are payable, during which such employer has been subject to this chapter. An employer's merit rating index shall be the quotient obtained by dividing his experience payroll by the rated amount of the compensable separations which, in accordance with subsection (c) of this section, have been charged against his merit rating account during the experience period. The 'rated amount' of a compensable separation shall be the total unemployment benefit rate of the individual.

"(b) ADJUSTMENT OF CONTRIBUTION RATES. As of each June thirtieth as of which merit rating indexes are computed, in accordance with subsection (a) of this section, the total of the experience payrolls of all employers for whom merit rating indexes are computed shall be divided into thirteen approximately equal parts, such that

The amount of the downward adjustment of each employer is determined, pursuant to General Statutes § 31-226, by computing a merit rating index for each of the eligible employers with respect to the whole three-year period ending on June 30. The merit rating index is the quotient obtained by dividing the experience payroll of a particular employer by the total unemployment benefit paid as a result of compensable separations charged to the employer.

Section 31-226 (b) provides that the defendant then divide the total of the experience payrolls of all employers with a merit rating index into thirteen approximately equal parts, with the first of these parts consisting of the experience payrolls of those

(1) the first of such parts shall consist of the experience payrolls of employers with the lowest merit rating indexes, except that when the balance in the unemployment compensation fund is three and one-half per cent or more of the three-year payroll no employer whose merit rating index is four hundred or higher shall be included in the first part, the experience payroll of any employer affected by this exception to be placed in the second part, (2) the thirteenth of such parts shall consist of the experience payrolls of employers with the highest merit rating indexes, (3) any other given part shall consist of the experience payrolls of employers whose merit rating indexes are lower than the merit rating indexes of all employers whose experience payrolls are included in any higher numbered part, but are higher than the merit rating indexes of all employers whose experience payrolls are included in any lower numbered part and, (4) if a division of the aforesaid total of the experience payrolls into thirteen exactly equal parts would require that an employer's payroll be divided between two of the parts, his payroll shall be included in the lower numbered of such two parts. Each employer's rate of contribution on wages paid by him during the twelve calendar months commencing on the January first next following the end of the experience period shall be in accordance with the following table, instead of that specified in subsection (a) of section 31-225, except that any employer entitled to merit rating who has had no compensable separations charged against his merit rating account during the experience period shall be entitled to the contribution rate assigned to the thirteenth part: . . . ."

employers with the lowest (or worst) merit rating indexes, and the thirteenth of these parts consisting of the experience payrolls of those employers with the highest (or best) merit rating indexes. The payrolls of the other employers would then be divided among the intervening parts according to their merit rating indexes. If the division of the total of the experience payrolls into thirteen exactly equal parts would require that an employer's payroll be divided between two of the parts, then his payroll would be included in the lower numbered merit rating and the employer would be taxed at the higher rate, as set forth in § 31-226 (b) (4).

The statute sets forth a tax table establishing the contribution rate applicable to employers in each of the thirteen parts. The portion of this table applicable for the years 1968 and 1969 is as follows:

| MERIT RATING PART | RATE |
|---|---|
| 1 | 2.7% |
| 2 | 2.55 |
| 3 | 2.4 |
| 4 | 2.25 |
| 5 | 2.1 |
| 6 | 1.95 |
| 7 | 1.8 |
| 8 | 1.65 |
| 9 | 1.5 |
| 10 | 1.35 |
| 11 | 1.2 |
| 12 | 1.05 |
| 13 | .9 |

In 1968 the total experience payroll of all employers under the plan was $7,727,645,871. To arrive at thirteen approximately equal parts, the defendant first divided the total payroll into thirteen exactly equal parts, with each part containing

$594,434,298. The employers with the lowest merit rating were taxed at the rate applicable to merit rating part one, or 2.7 percent. The employers with the lowest rating were placed in part one until that merit rating equaled $594,434,298; the employers with the next lowest merit rating index would then be placed in merit rating two until that equaled $594,434,298. This procedure would continue until the entire experience payroll for the state had been placed, subject to the adjustment of contribution rates in accordance with § 31-226 (b) of the General Statutes.[4]

In 1968, the plaintiff's experience payroll was $658,195,373. After dividing the total of the experience payrolls into thirteen approximately equal parts, the plaintiff's experience payroll would have been spread among merit ratings nine, ten, and eleven, falling into the merit rating parts as follows:

| MERIT RATING PART | AMOUNT OF PLAINTIFF'S PAYROLL IN THE PART | CONTRIBUTION RATE |
|---|---|---|
| 9 | $ 63,746,940 | 1.5% |
| 10 | 594,434,298 | 1.35 |
| 11 | 14,134 | 1.2 |

Pursuant to General Statutes § 31-226 (b) (4), the defendant allocated the entire experience payroll of the plaintiff to merit rating nine, thus requiring the plaintiff to pay the contribution rate of 1.5 percent, the highest of the three rates for the parts into which the payroll fell. In taxing the plaintiff in this manner no payroll of any employer was allocated to

---

[4] Part thirteen is usually not of the same relative size as the other twelve parts because § 31-226 (b) of the General Statutes directs that any employer who has had no compensable separations shall be entitled to the contribution rate of the thirteenth part, and many employers do qualify for this lowest rate.

merit rating part ten because the plaintiff's payroll took up this category and under statutory direction the administrator placed the employer's payroll in the lower number, viz. nine.

In the year 1969, the total experience payrolls of all employers with a merit rating index was $8,354,563,157 and this was divided into thirteen approximately equal parts of $642,658,704. The plaintiff's total experience payroll for 1969 was $749,040,786. The payrolls were assigned to the thirteen parts based on the employer's merit rating index and the plaintiff's payroll, once again, fell among parts nine, ten and eleven as follows:

| Merit Rating Part | Amount of Plaintiff's Payroll in the Part | Contribution Rate |
|---|---|---|
| 9 | $   90,539,151 | 1.5% |
| 10 | 642,658,704 | 1.35 |
| 11 | 15,842,931 | 1.2 |

The defendant then allocated the plaintiff's entire payroll to part nine and taxed the entire experience payroll at 1.5 percent. As was the case in 1968, no payroll was allocated to merit rating part ten because the plaintiff's payroll exceeded one part and took up all of category ten.

The plaintiff duly notified the defendant of its claim that he had erred in his interpretation of § 31-226 (b) for the purpose of determining the contribution rate for the plaintiff for the years 1968 and 1969. The plaintiff requested that the defendant correct the allocation made with respect to its experience payroll for 1968 and 1969 and refund to the plaintiff the amounts by which it had overpaid the taxes. The defendant refused to alter the allocation made under § 31-226 (b), or to refund to the plaintiff any alleged overpayment.

The plaintiff argues, in the first instance, that the words of § 31-226 (b) (4) are clear and unambiguous and that they do not cover the situation where the experience payroll of a single employer is initially divided among more than two parts. Later in its brief, however, it states that the absence of an express provision covering the present situation in which a payroll falls into three parts "may arguably render the statute ambiguous as it applies to the plaintiff" in the years in question and in that event the statute should be construed in favor of the plaintiff.

The Unemployment Compensation Act was first enacted at a special session of the General Assembly in 1936. The particular provision before us was added as an amendment in 1939, § 1337e, and appears in the 1939 Supplement to the 1930 Revision of the General Statutes. The primary purpose of the act is to relieve the distress of unemployment; it is remedial in character; and it is to be liberally construed. *New Haven Market Exchange, Inc.* v. *Administrator,* 139 Conn. 709, 712, 97 A.2d 262.

When § 31-226 (b) (4) of the act was enacted in 1939 no single employer was large enough so that its experience payroll was likely to be divided among more than two parts. The statutory language in question is clear and describes a specifically delineated procedure which admits of no ambiguities. We cannot "search out some intent which we may believe the legislature actually had and give effect to it, . . . we are confined to the intention which is expressed in the words it has used." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128. The intention of the legislature, expressed in the language it uses, is the controlling factor and the application of common sense to the language is not

to be excluded. *Knoll* v. *Kelley,* 142 Conn. 592, 594, 115 A.2d 678. There is no room for statutory construction where the legislative intent is clear; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 376, 279 A.2d 561; and the legislature clearly expressed what it intended to mean at the time the legislation was adopted. There is no ambiguity. The scheme and plan of the Unemployment Compensation Act is plain. The entire enactment must be examined and its parts reconciled and made operative so far as possible. *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382, 171 A.2d 197.

The defendant is required to compute the tax liability for each of several thousand employers subject to the unemployment compensation law in accordance with standards and procedures set forth in General Statutes § 31-226. The establishment of the plaintiff's rates for the years in question affected the establishment of the rates of contribution of the other employers subject to the provisions of the act. A reading of the statutes makes it readily apparent that the legislature was aware of the complicated and technical nature of the method for fixing the rates of contribution to the fund. The tax or contribution is based on the balance in the trust fund and the employers' employee turnover experience. Most of the employers' payrolls fall into one of the thirteen parts; some payrolls spread into two. Section 31-226 (b) (4) in effect in 1968 and 1969 expressly provided for this eventuality so that the whole payroll, in such a case, must be placed in the lower part, which imposes the higher tax. For the first time in the history of the unemployment compensation law, however, the plaintiff's payroll spread over three parts in 1968 and 1969.

The defendant, as administrator of the act, is

required to carry out a number of steps under the law as part of his administration of the act. He must first determine the fund balance in proportion to the three-year payroll of all employers subject to the law and then, in fixing a merit rating status for any employer within the act, he must compute a merit rating index for each employer who has been subject to the act during a so-called experience period, which is the three-year period next before June 30 in the year in which the computation is made. This is followed by a division of the experience payrolls into approximately equal parts. It is noted that the word approximately is used. The experience payrolls are placed thereafter in parts as follows: The lowest rating index is placed in the first part or at the highest tax rate; the highest rating indexes are placed in the thirteenth part[5] or at the minimum rate; any other part consists of the experience payrolls of employers whose merit rating indexes are lower than the merit rating indexes of all employers whose experience payrolls are included in any higher numbered part. Under the steps set forth in § 31-226 (a) and the then applicable provisions of §§ 31-226 (b) (1), (2), (3), the administrator is directed to divide the total of experience payrolls into thirteen approximately equal parts; there is no directive to place a payroll or payrolls into all of the parts in the third step of the taxing procedure. Only the first (subject to one exception) and the thirteenth parts are specifically mentioned in subdivisions (1), (2) and (3) of the then § 31-226 (b). The mentioning of these specific parts requiring specific placement into those parts, namely, the first and thirteenth, is significant. If the legislature intended that each of the thirteen parts would be filled,

---

[5] See footnote 4, supra.

in the third procedural step, the statute, which is otherwise very specific, would have so stated. The thirteen approximately equal parts mentioned in the statute are merely a preliminary calculation modified by the fourth step toward the ultimate computation of the tax. When we reach the fourth step, namely, subdivision (4) of § 31-226 (b), in effect in 1968 and 1969, we see not a directive to divide the experience payrolls into exactly equal parts, but a subjunctive provision, that is, the proposition that if a certain act provides a given result, then the next step shall be taken in a specified manner. The fourth step of exact division is, therefore, decidedly different from the earlier step of the approximate division. The sole purpose of the division in the fourth step is to determine the payroll spread. The division into thirteen exactly equal parts does not carry with it a direction to impose a tax at each of the thirteen steps but only to determine a payroll spread. The payroll spread determination, therefore, brings in the next step in the imposition of the tax: the placing of an entire payroll, previously spread, into a single part for the purpose of assessing a tax higher than would be assessed under another system. The aggregate experience payroll was divided into thirteen parts as provided by law. The law does not provide that the parts shall be equal after the allocation of employer merit rating index numbers. The law provides that the allocation of the employer merit rating index numbers may cause a part to be unequal if an employer's payroll would have to be divided between two parts.

Section 31-226 (b) (4) does not specifically describe the situation where an employer's payroll falls into three merit rating parts and there are three possible tax rates. It would apply, however, in

this situation since it requires that in dividing the experience payroll into thirteen parts if a payroll falls between two of the parts it will be placed in the lower. Manifestly, any payroll which falls into three parts must fall into two parts. To hold otherwise would be to construe the statute as excluding payrolls falling into more than two parts and therefore negating § 31-226 (b) (4) entirely. The court may not supply a statutory failure to mention the unanticipated situation in express terms merely because the court feels good reason so exists; the remedy in such a situation lies with the General Assembly, not the court. *Bailey* v. *Mars,* 138 Conn. 593, 598, 87 A.2d 388; *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A.2d 689. The statute simply delineates a procedure for applying one of two possible tax rates. The fact that three possible tax rates might be involved does not warrant a finding that the legislature did not intend § 31-226 (b) (4) to cover the situation as to two of the parts. We must avoid an absurd consequence so as to attain a rational and sensible result which bears most directly on the object which the legislative body sought to obtain; *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508; and give effect to the obvious and express object of the statute which contemplated the eventuality where a portion of an employer's payroll fell into two parts even though no express statutory attention was given to a situation involving an additional third part of that payroll. *Adams* v. *Vaill,* 158 Conn. 478, 483, 262 A.2d 169. In this particular situation the enactment should be construed as nearly as may be in harmony with the purpose and the reasons on which it rests. As this court has stated: "All of the rates of all the employers must be set at a level that will produce a tax return

sufficient to maintain the integrity of the funds." *Allen Mfg. Co.* v. *Administrator,* 139 Conn. 402, 407, 94 A.2d 608.

The only express provision that the statute lacked was a specific instruction as to where to place an employer's payroll which spreads among more than two parts. The express provision when the payroll spread over two parts which had been used in the past provided for an acceptable, uniform and workable standard in administration and tax computation even though its practical effect results in circumstances in which the thirteen parts are no longer equal. See *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524; *Allen Mfg. Co.* v. *Administrator,* supra, 412. In such a case the wisdom of the above result is not a matter for consideration by this court. Taxation is "eminently practical." *United States* v. *Jacobs,* 306 U.S. 363, 370, 59 S. Ct. 551, 83 L. Ed. 763. The court cannot read something into a statute to reach a just result nor can it substitute its judgment of what would constitute a wiser provision for the clearly expressed intent of the legislature. *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265. In such a case the administrator must follow the statutory directive as closely as possible, consistent with the clear intent of the law, so as to afford employers similarly circumstanced equal protection of the law. Statutes relating to taxation are not penal, nor in derogation of natural right, and are to be so construed as to carry into effect the obvious intent of the legislature. *Cornwall* v. *Todd,* 38 Conn. 443, 447. Had the plaintiff's payroll fallen into all or a portion of the ninth part and all of the tenth part, with no portion in the eleventh part, the allocation of the entire payroll to the ninth part

would have been mandatory under the statute and no payroll of any employer could have been assigned to the tenth part. That a construction of a statute might in exceptional cases work to the disadvantage of a taxpayer who may be affected does not justify a construction violating an expressed intent of the legislature. *Savings Bank of Rockville* v. *Wilcox,* 117 Conn. 188, 195, 167 A. 709. Taxing the entire payroll at the highest rate might be deemed unjust or inequitable; any change, however, must necessarily rest with the General Assembly.[6] It is a legislative, not a judicial, function to reduce the hardships resulting from a statute. *Second National Bank of New Haven* v. *Loftus,* 121 Conn. 454, 459, 185 A. 423. Adopting the solutions which the plaintiff proposes would thwart the plan and scheme of the legislation and defeat the clear intent of the legislature when it enacted the act and the amendments thereto.

Since § 31-226 (b) (4) does apply to the plaintiff's payroll for the years 1968 and 1969, and the plaintiff's payroll did fall between merit rating parts nine and ten, the portion of the plaintiff's payroll falling into merit rating part ten must be placed in merit rating part nine and taxed at the corresponding rate pursuant to the statute.

The portion of the plaintiff's payroll falling into merit rating eleven in 1968 and 1969 should remain therein and be taxed at the corresponding rate of 1.2

---

[6] It should be noted that the legislature has amended § 31-226 (b) to specifically cover the situation where an employer's payroll falls into more than two merit rating parts. Section 31-226 (b) (4) as amended by the 1971 session provides: "Employers whose payrolls are in two or more parts shall be assigned a composite rate computed by applying the same percentage ratio to the contribution rates of each part that the ratio of the payroll in each part is to the total payroll." Public Acts 1971, No. 835 § 10 (c).

percent. The initial division of the experience payrolls for all employers under § 31-226 (b) (1) resulted in the assignment of $14,134 in 1968 and $15,842,931 in 1969 of the plaintiff's payroll to merit rating eleven. The tax rates for such sums would be at the corresponding rate of 1.2 percent unless subsection (b) (4) operated to force the payroll into a higher merit rating part. We have applied § 31-226 (b) (4) to that portion of the plaintiff's payroll falling into merit rating part ten, but we conclude that this section does not apply to that portion of the plaintiff's payroll falling into merit rating eleven. Section 31-226 (b) (4) specifically states that the payroll must be placed in the lower numbered of the two parts. The use of the comparative form, lower, in § 31-226 (b) (4) and the failure of the legislature to specifically authorize consecutive application of subsection (b) (4) to a single payroll precludes concluding that subsection (b) (4) applies to the portion of the plaintiff's payroll falling into merit rating eleven.

Since subsection (b) (4) does not apply to the portion of the plaintiff's payroll falling into merit rating part eleven, the commissioner was without authority in placing that portion of the payroll into merit rating nine. The administrator cannot act beyond the statutory scheme by which he is empowered to act. *Hammerberg* v. *Holloway,* 131 Conn. 616, 621, 41 A.2d 771; *DeFlumeri* v. *Sunderland,* 109 Conn. 583, 585, 145 A. 48. The portion of the plaintiff's payroll falling into merit rating eleven in 1968 and 1969, therefore, was unaffected by subsection (b) (4) and must remain taxable at the rate determined by the initial division of the experience payroll into thirteen parts as determined by § 31-226 (b) (1).

The Unemployment Compensation Act pursuant to

§§ 31-268 and 31-269 requires, in the event of an over-payment of a contribution, that the administrator shall make an adjustment either by means of a reduction in future contributions or through a refund.[7] The administrator did not make an adjustment pursuant to § 31-268; therefore, a refund must be made to the plaintiff pursuant to § 31-269. *Allen Mfg. Co.* v. *Administrator,* 139 Conn. 402, 411, 94 A.2d 608.

The answer to questions one and four propounded in the reservation is that the portion of the plaintiff's payroll falling into merit rating parts nine and ten for the years 1968 and 1969 was properly placed in merit rating part nine and taxed at 1.5 percent; that portion of the plaintiff's payroll falling into merit

---

[7] "[General Statutes] Sec. 31-268. ADJUSTMENT OF ERRORS. The administrator may make and publish regulations providing that if, through error and without fraudulent intent, more or less than the correct amount of contributions has been paid with respect to employment during any period, adjustments may be made without interest in computing contributions due and payable with respect to employment during subsequent contribution periods, or otherwise, within such time limits and subject to such conditions as the administrator prescribes.

"[General Statutes] Sec. 31-269. REFUNDS AND DEFICIENCIES. If more or less than the correct amount of contributions imposed has been paid with respect to employment during any period and if such overpayment or underpayment cannot be or is not adjusted under section 31-268, the amount of the overpayment shall be refunded to the employer from the contribution account of the unemployment compensation fund or the amount of the underpayment shall be paid by the employer to the administrator at such time as the administrator prescribes, provided no refund shall be made unless request has been made within three years from the due date of the contributions claimed to have been overpaid or which would be contrary to the requirements of the social security act or any amendments thereto. The amount of unemployment compensation benefits, if any, paid to any claimant, which is based upon wage credits established as a result of the overstatement of wages which caused the overpayment, shall be deducted from the refund. Any refunds of interest paid into the employment security special administration fund established by section 31-259 shall be paid from said fund."

rating eleven for the years 1968 and 1969, $14,134 and $15,842,931 respectively, remains in merit rating eleven and is taxed at 1.2 percent; the item relating to interest contained in question four is not answered since it was neither briefed nor argued to this court. Reference is made, however, to § 31-269, inter alia. To questions two, three, seven and eight we answer "No." Questions five, six and nine require no answer.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.